IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| XENON HEALTH LLC, *et al.*, | \| |
| | \| |
| Plaintiffs, | \| |
| | \| |
| v. | \|          Case No. 1:13-cv-244 |
| | \|          LO/TCB |
| MIRZA BAIG, | \| |
| | \| |
| Defendant. | \| |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER VENUE OR, IN THE ALTERNATIVE, TO DISMISS AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

## I.      PRELIMINARY STATEMENT

At its core, this case arises out an alleged breach of contract in Texas by a Texas doctor and a Texas company.  Plaintiff Xenon Health LLC ("Xenon LLC") provides management services to companies that perform anesthesia at medical facilities.  Plaintiff Haroon Chaudhry is Xenon LLC's Chief Executive Officer.  Plaintiffs entered into an agreement with a Texas doctor to form a Texas company for the purpose of expanding their business into Texas and obtaining Texas clients.  According to the agreement, the Texas doctor was supposed to sell the Texas company to Chaudhry once he received his own license to practice medicine in Texas.  Prior to doing so, however, the Texas doctor and the Texas company declared the contract to be invalid and purportedly attempted to interfere with Plaintiffs' business expectancies.  Plaintiffs filed a lawsuit against the doctor and the company in Montgomery County, Texas which remains pending today.

1

In spite of having already filed suit in Texas, as well as having filed separate additional suits in New York[1] and California[2], Plaintiffs subsequently chose to file this lawsuit against Virginia resident Mirza Baig, alleging that he masterminded a conspiracy to bring about the breaches of contract that are at issue in the Texas lawsuit.  In their six count Amended Complaint, Xenon LLC and Chaudhry seek damages from Baig for his alleged tortious interference with Chaudhry's contractual relations (Count I), tortious interference with Xenon LLC's contractual relations (Count II), tortious interference with Xenon LLC's employment contract with a former California employee (Count III), tortious interference with Xenon LLC's business expectancy (Count IV), conspiracy to injure Plaintiffs' reputation pursuant to Va. Code § 8.01-499 (Count V), and common law conspiracy to induce others to breach their contracts in Texas with Plaintiffs (Count VI).

The Amended Complaint is heavy on conclusory allegations and light on substantive facts. It sets forth numerous allegations of purportedly unlawful actions on the part of various co-conspirators and then prefaces each such action with the mantra that the individual acted "under the direction and undue influence of Baig."  Plaintiffs make no effort to expound upon these conclusory statements, essentially asking the Court to infer the specific facts that are required by law, but not pleaded in the Amended Complaint.  The lack of any specific allegations evidencing Baig's role as the orchestrator of the conspiracy highlights the frivolity of the claims, all of which should be dismissed as a matter of law.

This baseless lawsuit should never have been filed in the first place.  As Plaintiffs' prior three related lawsuits have amply demonstrated, this lawsuit simply represents the next stop on

---

[1] Index No. 653578/2011 in the Supreme Court of the State of New York, County of New York.
[2] Cause No. 30-2012-00574880 in the Superior Court of California.

Plaintiffs' forum shopping spree. If anywhere, however, this case should have been filed in the Southern District of Texas where the aforementioned state court litigation is pending. Nearly every one of the twenty-two pages of allegations in the Amended Complaint contains a reference to events occurring in Texas. The claims in this case involve Texas businesses, Texas witnesses and agreements governed by Texas law. In fact, the Amended Complaint only identifies two witnesses who reside in this judicial district, one of whom is the Defendant and both of whom have stated under oath that they prefer to have this matter transferred to Texas.

For all of these reasons, as set forth in detail below, Baig moves this Court to dismiss this meritless lawsuit for the failure to state a claim upon which relief can be granted or, in the alternative, to transfer venue to the United States District Court for the Southern District of Texas.

## II.    FACTUAL BACKGROUND

Plaintiff Xenon Health LLC ("Xenon LLC") is a California based limited liability company that provides management services to companies that perform anesthesia at medical facilities. Doc. No. 10, Amended Complaint ("Am. Compl.") ¶ 6. Plaintiff Haroon Chaudhry is Xenon LLC's Chief Executive Officer and a resident of California. *Id.* at ¶ 2. Defendant Mirza Baig is a resident of the Commonwealth of Virginia. *Id.* at ¶ 3.

Having previously provided its services primarily in Ohio, Xenon LLC decided in early 2011 to expand its business into the State of Texas. *Id.* at ¶¶ 7-8. In furtherance of its significant expansion effort, Dr. Chaudhry identified several Texas medical facilities which were in need of the type of anesthesia services provided by Xenon LLC. *Id.* at ¶ 9. He then secured a firm commitment from Dr. Shabbir Jamali and Dr. Mosab Hasan, the owners of two Texas medical facilities, to engage the anesthesia management services of Xenon LLC for their respective companies. *Id.* at ¶ 10. More specifically, Dr. Jamali was the owner of the Gastroenterology

Diagnostic Center in Tomball, Texas[3] ("GDC-Tomball") and Dr. Hasan was the owner of Westover Hills Gastroenterology Center in San Antonio, Texas ("WHGC"). *Id.*

At the time that Dr. Chaudhry obtained the commitments of GDC-Tomball and WHGC (collectively, the "Texas Clients"), he was not yet licensed to practice medicine within the State of Texas. *Id.* at ¶ 12. In an attempt to circumvent the Texas licensing requirements and provide immediate services to the Texas Clients, Dr. Chaudhry decided to form a Texas based entity that would be temporarily owned by a Texas physician until such time as Dr. Chaudhry obtained his license to practice medicine in Texas. *Id.* at ¶ 13. In the course of searching for such a licensed physician, the Chief Operating Officer of Xenon LLC, Fahim Hashim, reached out to his college friend Mirza Baig. *Id.* at ¶ 14. Baig recommended his cousin Dr. Ali Khan, who was a resident of Spring, Texas[4] and held a license to practice internal medicine within the State. *Id.* at ¶¶ 14-15.

Dr. Chauhdry and Dr. Khan entered into an Equity Interest Assignment Agreement and Purchase and Sale Agreement (collectively, the "Sales Agreements") whereby Dr. Khan would form the Texas business entity Xenon Anesthesia of Texas PLLC ("Xenon TX") and be its sole managing member until such time as Dr. Chaudhry obtained his license to practice medicine in the State of Texas. *Id.* at ¶¶ 16-17. Upon obtaining a Texas medical license pursuant to the terms of the Sales Agreements, Dr. Chaudhry was then entitled to purchase all of Dr. Khan's interest in Xenon TX. *Id.* at ¶¶ 17, 22. Xenon TX was subsequently formed in July of 2011 with its principal place of business in the Woodlands, Texas.[5] *Id.* at ¶¶ 16, 19; Ex. A, Declaration of Mirza Baig ("Baig Decl.") ¶ 5.

---

[3] Tomball, Texas is located in Harris County which falls within the judicial district of the United States District Court for the Southern District of Texas.

[4] Spring, Texas is located in Montgomery County within the Southern District of Texas.

[5] The Woodlands, Texas is also located in Montgomery County within the Southern District of Texas.

As part of Dr. Chaudhry's arrangement with Dr. Khan, Xenon TX also entered into an Exclusive Management Services Agreement (the "Management Agreement") granting Xenon LLC the exclusive right to provide management services on behalf of Xenon TX. Am. Compl. ¶¶ 18-19. This included the right to provide all management services for the Texas Clients and also joint access to the bank accounts of Xenon TX "for management purposes." *Id.* The Management Agreement also required Xenon TX to pay Xenon LLC a considerable flat "monthly service fee of $750,000" and to reimburse Xenon LLC for expenses incurred in providing the exclusive management services. *Id.* Notably, both the Sales Agreements and the Management Agreement contain choice of law provisions providing that any controversy arising out of or relating to the agreements is to be governed by and construed in accordance with the laws of the State of Texas. Ex. B, Declaration of Asim AR Ghafoor ("Ghafoor Decl.") ¶ 8.

In December of 2011, Dr. Khan and Xenon TX terminated their respective agreements with Dr. Chaudhry and Xenon LLC. *Id.* at ¶¶ 35-36. That same month, Hashim had a falling out with Xenon LLC and terminated his employment with the company. *Id.* at ¶ 23. Plaintiffs contend that the aforementioned terminations were part of a conspiracy "masterminded" by Baig to tortiously interfere with the contractual relations and business expectancies of both Dr. Chaudhry and Xenon LLC by inducing Dr. Khan and Xenon TX to breach the Sales Agreements and the Management Agreement and also by inducing Hashim to breach the terms of his employment agreement with Xenon LLC. Plaintiffs allege that the master plan was to keep Xenon TX, steal Plaintiffs' Texas clients and also usurp Plaintiffs' opportunities to land new clients. Plaintiffs go on to identify a host of individuals who allegedly participated or were otherwise involved in the conspiracy, including Hashim (residing in California), his brother Naseer (residing in California), Dr. Khan (residing in Texas), Dr. Ali Bhuriwala (residing in Texas), Aamir Abedeen (residing in New York),

Feisal Toor (residing in Maryland) and even the attorney for Dr. Khan and Xenon TX, Asim Ghafoor (residing in Virginia). *Id.* at ¶¶ 24, 47-49, 78-79, 93.

Aside from the fact that virtually none of the alleged co-conspirators reside in Virginia, there is no evidence that Baig committed any unlawful acts in Virginia. In fact, the Amended Complaint does not even allege that Baig was in Virginia at the time he purportedly masterminded the conspiracy. And, as Baig points out in his declaration, he was traveling throughout the United States and abroad for much of the time period when the alleged conspiracy was formed and carried out. Ex. A, Baig Decl. ¶ 23.

Finally, it should not be overlooked that, prior to filing the Amended Complaint in this matter, Plaintiffs filed a similar action in Texas (the "Texas Lawsuit") against Dr. Khan and Xenon TX asserting breach of contract and tortious interference arising out of substantially the same facts and circumstances in this case. Ex. B, Ghafoor Decl. ¶¶ 4-5, 7, 9, 11. In the Texas Lawsuit, Plaintiffs asserted that venue was proper in Montgomery County, Texas. *Id.* at ¶4. Montgomery County is located within the judicial district of the United States District Court for the Southern District of Texas, which is where the Texas Lawsuit remains pending to this day and where this matter should be transferred, if not dismissed.

## III.   ARGUMENT

### A.   Venue Should Be Transferred to the United States District Court for the Southern District of Texas.

Baig moves for a transfer of venue to the United States District Court for the Southern District of Texas pursuant to 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought." As the moving party, Baig bears the burden of showing that transfer to another forum is proper. *See, e.g., Kraft v. Hoskins*, 311 F.Supp.

1404, 1405 (E.D.Va. 1970). The decision whether to transfer an action pursuant to § 1404(a) "is committed to the sound discretion of the district court." *Verosol B.V. v. Hunter Douglas, Inc.*, 806 F.Supp. 582, 591 (E.D.Va. 1992). While derived in part from, and drafted in accordance with, the common law doctrine of *forum non conveniens*, 28 U.S.C. § 1404(a) is broader and grants district courts more discretion to transfer cases than the common law doctrine. *See, e.g., Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); *Akers v. Norfolk & W. Ry. Co.*, 378 F.2d 78, 79 (4th Cir. 1967); *Cognitronics Imaging Sys., Inc. v. Recognition Research Inc.*, 83 F.Supp.2d 689, 696 (E.D.Va. 2000).

In considering whether to transfer venue, a district court must make two inquiries: first, whether the claims might have been brought in the transferee forum, and then whether the interest of justice and convenience of the parties and witnesses justify transfer to that forum. *Koh v. Microtek Intern., Inc.*, 250 F.Supp.2d 627, 630 (E.D.Va. 2003); *Southern Ry. Co. v. Madden,* 235 F.2d 198, 201 (4th Cir.1956). The results of these two inquiries lead to the same conclusion: that all claims not otherwise dismissed should be transferred to the Southern District of Texas.

### 1. This lawsuit could have been brought in the United States District Court for the Southern District of Texas.

As an initial matter, this lawsuit could have been brought in the United States District Court for the Southern District of Texas because diversity jurisdiction exists and a substantial part of the events giving rise to Plaintiffs' claims arose in that judicial district. Pursuant to 28 U.S.C. § 1332, the Texas Court has diversity jurisdiction over this nine-plus million dollar action (as set forth in the Prayer for Relief of the Amended Complaint) because the amount in controversy exceeds $75,000 (exclusive of interest and costs), and involves parties who are citizens of different states. On the Plaintiffs' side, Xenon LLC maintains its principal place of business in California and

Chaudhry is a resident of California.  Am. Compl. ¶¶ 1-2.  On the Defendant's side, Baig is a resident of the Commonwealth of Virginia.  *Id.* at ¶ 2.

Pursuant to 28 U.S.C. § 1391, venue also is proper in the Texas Court because it is located in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  Plaintiffs have virtually conceded this point for all intents and purposes by alleging in the Texas Lawsuit – which arises out of nearly identical facts and circumstances as this case – that venue "is proper in Montgomery County, Texas…because all or a substantial part of the events or omissions giving rise to the claim occurred in Montgomery County, Texas; defendant Dr. Ali Khan resides in Montgomery County, Texas and Xenon Texas maintains its principal office in Texas in Montgomery County, Texas."  Ex. B, Ghafoor Decl. at Ex. 1, ¶ 6.

This concession is echoed in the Amended Complaint, which clearly points to venue in the Southern District of Texas.  For example, Plaintiffs claim that Baig influenced Dr. Khan to breach the Sales Agreement by refusing to sell Xenon TX to Dr. Chaudhry.  Dr. Khan resides within the Southern District of Texas which is also where Xenon TX maintains its principal place of business and only office.  Am. Compl. ¶¶ 35-36.  Plaintiffs further suggest that Baig interacted with a Dr. Ali Bhuriwala to carry out his "master plan."  *Id.* at ¶¶ 93-95.  Dr. Bhuriwala resides in Houston which is located within the Southern District of Texas.  *Id.* at ¶ 93.  Plaintiffs also contend that Baig induced Xenon TX to breach the Management Agreement by, among other things, usurping Xenon LLC's role in servicing the Texas Clients.  *Id.* at ¶¶ 41-45.  Texas Client GDC-Tomball is significant because its office is located within the Southern District of Texas and its owner, Dr. Jamali, lives in Texas.  *Id.* at ¶ 10; Ex. A, Baig Decl. ¶ 29.  Plaintiffs go on to allege that co-conspirator Aamir Abedeen made fraudulent misrepresentations to a Dr. Hirose, who works for GDC-Tomball in the Southern District of Texas.  *Id.* at ¶¶ 47-49.

Plaintiffs' selection of the Southern District of Texas as the venue for filing their Texas Lawsuit, along with the host of Texas-based facts alleged in the Amended Complaint, clearly demonstrate that a substantial part of the events or omissions giving rise to this lawsuit occurred within the Southern District of Texas.  Thus, the first part of this Court's inquiry is fully satisfied and the balance of venue factors may be considered.

      **2.**      **The balance of venue factors weighs heavily in favor of transfer to the Southern District of Texas.**

In exercising its discretion and determining whether to grant a motion pursuant to § 1404(a), a court must consider and balance a number of factors, including:  (1) ease of access to sources of proof; (2) the convenience of the parties and witnesses; (3) the cost of obtaining the attendance of witnesses; (4) the availability of compulsory process; (5) the interest in having local controversies decided at home; (6) in diversity cases, the court's familiarity with the applicable law; and (7) the interest of justice.  *See Cognitronics*, 83 F.Supp.2d at 696; *Reynolds Metals Co. v. FMALI, Inc.*, 862 F.Supp. 1496, 1501 (E.D.Va. 1994) (citing *Verosol*, 806 F.Supp. at 592); *Board of Trustees, Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F.Supp. 1253, 1256 (E.D.Va. 1988).  For reasons that are apparent on the face of the Amended Complaint and further supported by the Baig and Ghafoor Declarations, the balance of these factors tips decidedly in favor of transferring this matter to the Southern District of Texas.

      **(a)**      **The convenience of parties and witnesses as well as the ease of access to sources of proof weigh in favor of transfer to the Southern District of Texas.**

In balancing the convenience of the parties, the plaintiff's choice of forum ordinarily is accorded considerable weight.  *See, e.g., Chedid v. Boardwalk Regency Corp.*, 756 F.Supp. 943, 945 (E.D.Va. 1991); *Baylor Heating*, 702 F.Supp. at 1256.  However, when, as here, a plaintiff chooses a foreign forum and the cause of action bears little or no relation to that forum, the

plaintiff's chosen venue is not entitled to such substantial weight. *Verosol*, 806 F.Supp. at 591 (citations omitted). Given that neither Plaintiff in this case is suing in its home forum (both Plaintiffs are residents of California[6]), and considering that the causes of action are at best only tenuously related to this forum, Plaintiffs' initial venue choice will not impede transfer if, as demonstrated herein, the relevant § 1404(a) factors point to another forum. *Id.* at 591. In point of fact, the transfer of this case to Texas should make the lawsuit *more* convenient for Plaintiffs since it is closer to their home state as well as the majority of substantive witnesses.

Witness convenience, which overwhelmingly favors Texas venue, is often dispositive in transfer decisions. *Baylor Heating*, 702 F.Supp. at 1257 (E.D.Va. 1988) (citation omitted). However, reliable information must be presented identifying the witnesses involved and specifically describing their testimony. *Id.* This type of particularized information, typically submitted in affidavit form, is necessary to enable the court to ascertain how much weight to give a claim of inconvenience. *Id.* Inconvenience to a witness whose testimony is cumulative is not entitled to greater weight. *Id.* By contrast, greater weight should be accorded inconvenience to witnesses whose testimony is central to a claim and whose credibility is also likely to be an important issue. *Id.* In this particular case, the admissions of Plaintiffs through their court filings, along with the declarations from Baig and Ghafoor, demonstrate a greater convenience for the majority of witnesses in this case if the matter is transferred to Texas.

The Amended Complaint identifies sixteen total individuals who were allegedly affected by or else somehow involved in the conspiracy. For ease of reference, a chart of each individual identified in the Amended Complaint along with that individual's state of residence is attached hereto as Exhibit C. Out of those sixteen individuals, seven reside in the State of Texas, with all

---

[6] Xenon LLC is also considered a resident of New York.

but two residing within the Southern Judicial District.  Three of the remaining individuals reside in California, which is undisputedly closer to Texas than Virginia.  Three individuals reside in Maryland (Toor, Shah and Irfan) and one resides in New York (Abedeen), although the involvement of those individuals appears to be minimal based upon the allegations in the Amended Complaint.  This leaves only two individuals alleged in the Amended Complaint who actually reside within this Court's judicial district in the Eastern District of Virginia:  Mirza Baig and attorney Asim Ghafoor.  As evidenced by the declarations of Baig and Ghafoor, however, both individuals have stated that they would not be inconvenienced by the transfer of this matter to the Southern District of Texas.  Ex. A, Baig Decl. ¶ 34, Ex. B, Ghafoor Decl. ¶ 17.  Thus, in balancing the convenience of witnesses, there do not appear to be any Virginia witnesses who would be inconvenienced by the requested transfer, nor does it appear that the transfer would inconvenience any material witnesses, the majority of whom reside in Texas or else California.

It is also readily apparent from the allegations in the Amended Complaint and the declarations of Baig and Ghafoor that the aforementioned witnesses will be important to the defense of this case.  Plaintiffs have put the credibility of Baig and his alleged co-conspirators front and center by alleging that Baig was a conspiracy mastermind who acted with "malice" as well as through "misrepresentations, deceit, defamation, duress, undue influence…unethical conduct and sharp dealing."  Am. Compl. ¶¶ 103, 106.  In order to disprove the Plaintiffs' conspiracy theory, the testimony of the other purported co-conspirators, as well as those allegedly contacted by the co-conspirators, will be essential.

The Baig Declaration sets forth in particularized detail how the testimony of numerous witnesses who reside in Texas will likely be crucial to his defense of Plaintiffs' claims.  Other than Hashim and his brother Naseer (who, like Plaintiffs, reside in California), Baig's purported

remaining named co-conspirators are Dr. Khan, Dr. Bhuriwala and Xenon TX. Dr. Khan resides in Spring, Texas and Xenon TX's principal and only place of business is located in The Woodlands, Texas. Baig Decl. ¶¶ 5-6. Both are located in Harris County, Texas which is within the Southern District of Texas. Dr. Bhuriwala resides in Montgomery, Texas which is located in Montgomery County and also within the Southern District of Texas. *Id.* at ¶ 33. Plaintiffs' counsel has even sent correspondence to Dr. Bhuriwala in Texas instructing him to preserve evidence believed to be relevant in this case. Ex. A, Baig Decl. ¶¶ 31-32. Baig expects both Dr. Khan and Dr. Bhuriwala to debunk Plaintiffs' notion of any conspiracy or wrongdoing. *Id.* at ¶¶ 7, 33. He further expects Dr. Bhuriwala to confirm that the two have never met in person and only spoken approximately one time in the past. *Id.* at ¶ 22. Moreover, to the extent that these individuals/entities have documents disproving the existence of any conspiracy, it is believed that they will be located in Texas at their respective company offices. *Id.* at ¶¶ 12, 25, 32.

Plaintiffs have also alleged that Baig conspired to steal the Texas Clients. However, Baig has never met, whether directly or indirectly, Dr. Jamali – the owner of GDC-Tomball – or Dr. Hasan – the owner of WHGC – and he never tried to steal their business away. *Id.* at ¶ 29. Dr. Jamali and Dr. Hasan both live in Texas and their testimony will be important to corroborate this fact. *Id.* Aside from existing clients, Plaintiffs also allege that Baig conspired to steal potential clients, including Dr. Garcia and Dr. Siddiqui who live in Texas. *Id.* at ¶ 14. In point of fact, Baig has never met nor had any contact whatsoever with Dr. Garcia or Dr. Siddiqui and their testimony will again be essential to corroborate this fact. *Id.* at ¶ 15. Plaintiffs further contend that a purported "business associate" of Baig named Aamir Abedeen left an improper voicemail containing fraudulent statements to "Dr. Yoko Hirose, an agent of Xenon TX who provides anesthesia to patients at GDC-Tomball." Am. Compl. ¶¶ 47-49. In addition to his own testimony

rebutting these allegations, then, the testimony and credibility of these corroborating Texas witnesses will be crucial to Baig's defense in this jury trial.

Notably, it does not appear from the Amended Complaint that *any* substantive witnesses reside in Virginia other than Baig and Ghafoor. While Plaintiffs sprinkle in allegations of Hashim and Baig conspiring to create a Maryland company, Strategy Anesthesia LLC, to compete with Xenon LLC, there is no allegation in the Amended Complaint that California based Xenon LLC was authorized to transact business within the State of Maryland during the alleged 2012 timeframe. And, while the Amended Complaint asserts on the one hand that Strategy solicited the "Shah Facility" in Maryland based upon confidential information obtained by Hashim, it undermines this allegation by conceding that the owner of the facility, Dr. Shah, was actually a family acquaintance of Baig – a fact confirmed by Baig in his declaration – not some secret client gleaned from a confidential Xenon LLC database. *Id.* at ¶ 63; Ex. A, Baig Decl. ¶ 19.

Aside from identifying a host of Texas-based individuals in the Amended Complaint, Plaintiffs have also identified additional individuals in their prosecution of the Texas Lawsuit who will likely have information relevant to this lawsuit. Attached to Ghafoor's Declaration is a copy of Plaintiffs' responses to a Request for Disclosure in the Texas Lawsuit which, on page 4, asks them to identify persons having knowledge of relevant facts. Ex. B, Ghafoor Decl. at Ex. 1, p. 4. Plaintiffs identify all of the Texas individuals referenced in the Amended Complaint in this matter, along with two additional witnesses located in Texas and two in California. By Plaintiffs' own admission, then, there appear to be even more relevant witnesses who reside either in Texas or California. Notably, Plaintiffs do not identify any additional witnesses who reside within this Court's judicial district.

Given the fact that the only two witnesses in this Court's judicial district want this matter transferred to Texas, coupled with the fact that a majority of relevant witnesses are located in Texas and Plaintiffs have already chosen the Southern District of Texas as a preferable forum for the Texas Lawsuit, it appears that transferring this case to Texas should actually be *more* convenient for all parties.

> **(b)      Compulsory process is not available with respect to the majority of witnesses who reside in Texas or California, and the cost of obtaining their appearance, if possible, would likely be high.**

Baig does not have any means of compelling the attendance of the majority of witnesses who reside in Texas or California to appear in Virginia.   As Baig does not know Drs. Jamali, Hasan, Garcia, Siddiqui or Hirose, and barely knows Dr. Bhuriwala, he has no expectation that these individuals will volunteer to leave their medical practices and fly to Virginia to testify in a multi-day jury trial for the sole purpose of exonerating a stranger.   The only other possible way to obtain the attendance of these witnesses at trial would be to offer them some form of financial incentive to testify.   There is no guarantee that such an offer would be accepted and, aside from potentially being expensive, the witnesses' credibility could be tarnished in the eyes of the jury for accepting money in exchange for testimony.   Yet, if this matter is transferred to the Southern District of Texas, it is believed that most, if not all, of the aforementioned witnesses would be within the court's subpoena power.  At the very least, they might consider traveling a short distance within Texas to testify.

> **(c)      The Southern District of Texas has the primary interest in having this local controversy decided at home in Texas under familiar principles of Texas law.**

Local courts have a strong interest in having local controversies decided at home.  *See BHP Int'l Inv., Inc. v. OnLine Exch., Inc.,* 105 F.Supp 2d 493, 495–96 (E.D.Va. 2000) (finding that local

forum would be better equipped to interpret the local statute that was in question). This lawsuit is anything but a local controversy and this Court should have little, if any, interest in deciding the issues in this case.

This is a case about California residents contracting with a Texas individual and a Texas company to do business in Texas and then suing an individual for allegedly conspiring with others to steal existing and potential clients in Texas. The contracts at issue are governed by Texas law, as are any disputes arising out of them.[7] And there is already a related lawsuit filed by Plaintiffs pending in Texas. Texas has an interest in resolving disputes between businesses operating within its borders arising out of contracts governed by Texas law, Virginia does not. This is especially so when the only apparent connection between the lawsuit and this forum appears to be based upon the fact that Baig lives here.

Notably, however, the Amended Complaint does not allege that any of Baig's purportedly unlawful activities were carried out in Virginia or that Plaintiffs suffered any injury or damages here. In fact, Baig was hardly in the Commonwealth during the December 2011 through January 2012 timeframe when it is alleged that his unlawful actions occurred. From approximately December 21, 2011 through January 5, 2012, he was in Greensboro, North Carolina (2 days), Savannah, Georgia (1 day), Tampa, Florida (7 days), Orlando, Florida (1 day) and San Francisco, California (1 day). Baig Decl. ¶ 23. From approximately January 10-13, 2012, he recalls being in Los Angeles, California. *Id.* From approximately January 15-31, 2012, he was traveling through the United Kingdom, Switzerland, Turkey, Saudi Arabia, Bahrain, the United Arab Emirates and Qatar. *Id.* Then, from approximately February 5-7, 2012, he was in Las Vegas, Nevada and then

---

[7] As set forth in Section B(2) below.

back in Los Angeles. *Id.* Thus, while this Court could certainly familiarize itself with Texas law, there is no Virginia-based interest for doing so.

**(d)      It is in the interests of justice to transfer this case to Texas.**

Given the reduced deference accorded Plaintiffs' choice of forum, the greater convenience to Baig and his essential witnesses if trial is held in Texas, the absence of any heightened burden on Plaintiffs or their witnesses in the event of transfer, the wholesale applicability of Texas law to this dispute and the lack of any material connection between the parties and the causes of action to this forum, it would serve the interests of justice to transfer this action to the United States District Court for the Southern District of Texas. For all of these reasons, the Motion to Transfer Venue should be granted.

**B.     The Complaint Should Be Dismissed For The Failure To State A Claim Upon Which Relief May Be Granted.**

**1.     Legal standard.**

A Federal Rule of Civil Procedure 12(b)(6) motion should be granted unless an adequately stated claim is "supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 561 (2007) (internal citations omitted); *see* Fed.R.Civ.P. 12(b)(6). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677 (2009) (quoting *Twombly,* 550 U.S. at 555). A complaint is also insufficient if it relies upon "naked assertions devoid of further factual enhancement." *Iqbal,* 556 U.S. at 678 (internal citations omitted).

In order to survive a Rule 12(b)(6) motion to dismiss a complaint must set forth "a claim for relief that is plausible on its face." *Id; Twombly,* 550 U.S. at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference

16

that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678; *Twombly,* 555 U.S. at 556.

In considering a Rule 12(b)(6) motion, the court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true. *Mylan Lab., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993). In addition to the complaint, the court may also examine "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007). "Conclusory allegations regarding the legal effect of the facts alleged" need not be accepted. *Labram v. Havel,* 43 F.3d 918, 921 (4th Cir. 1995). Because the central purpose of the complaint is to provide the defendant "fair notice of what the Plaintiffs' claim is and the grounds upon which it rests," the Plaintiffs' legal allegations must be supported by some factual basis sufficient to allow the defendant to prepare a fair response. *Twombly,* 550 U.S. at 556 n. 3.

To the extent that this Court decides that it will reach the substantive issues of Texas law in this case and retain venue, then all six causes action should be dismissed for their failure to state a claim upon which relief can be granted.

### 2.    Choice of Law Analysis

"It is axiomatic that, when sitting in diversity jurisdiction, federal courts must apply state substantive law as announced by the state's highest court." *Insteel Industries, Inc. v. Costanza Contracting Co., Inc.,* 276 F.Supp.2d 479, 483 (E.D.Va. 2003) (citing *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). Thus, "a federal court sitting in Virginia and exercising diversity jurisdiction applies Virginia's choice of law rules." *Id.* (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496-497, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). *See also*

*Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.,* 407 F.3d 631, 635 (4th Cir. 2005). "[G]iven that the parties and facts in this action are associated with multiple jurisdictions, it is first necessary to apply the Virginia choice of law rules to determine the substantive law against which the Court will measure the allegations that give rise to" all claims. *Insteel Industries,* 276 F.Supp.2d at 483.

**a.**    ***Lex loci delicti***

The first step in the choice of law analysis is to determine the nature of the claim, so that the proper choice of law rule may be applied. Here, all of the claims in the Amended Complaint are intentional tort claims, with the exception of the statutory business conspiracy claim. *MicroStrategy Inc. v. Business Objects, S.A.,* 429 F.3d 1344, 1362-1363 (Fed.Cir. 2005). Accordingly, under the Virginia choice of law rule for tort claims, the Court should "adhere to the *lex loci delicti,* or place of the wrong, standard that [is] 'the settled rule in Virginia.'" *Jones v. R.S. Jones and Associates, Inc.,* 246 Va. 3, 431 S.E.2d 33, 34 (1993). "The place of the wrong for purposes of the *lex loci delicti* rule [ ] is defined as the place where 'the last event necessary to make an act liable for an alleged tort takes place.'" *Quillen v. Int'l Playtex, Inc.,* 789 F.2d 1041, 1044 (4th Cir. 1986) (quoting *Miller v. Holiday Inns, Inc.,* 436 F.Supp. 460, 462 (E.D.Va. 1977)). *See also* Restatement (First) of Conflict of Laws § 377 (1934); *McMillan v. McMillan,* 219 Va. 1127, 253 S.E.2d 662 (1979) (declining to adopt the "most significant relationship" approach suggested in the Restatement (Second) of Conflict of Laws).

"The word 'tort' has a settled meaning in Virginia. A tort is any civil wrong or injury; a wrongful act. Thus Virginia's choice of law rule selects the law of the state in which the wrongful act took place, wherever the effects of that act are felt." *Milton v. IIT Research Institute,* 138 F.3d 519, 522 (4th Cir. 1998) (omitting internal citations and quotation marks). Notably, the Fourth

18

Circuit made clear in *Milton* that the place of the legal injury is not necessarily where the effects of the legal injury are felt. *Id.* Thus, the headquarters of a corporate victim, where the effects of an alleged conspiracy are ultimately felt on the bottom line, is not necessarily where the legal injury occurred. As set forth below, all six causes of action are governed by Texas law pursuant to Virginia's choice of law analysis.[8]

### 3. Counts I-III of the Amended Complaint fail to allege facts sufficient to state a claim for tortious interference with contractual relations.

Count I alleges that Baig tortiously interfered with the Sales Agreements between Dr. Chaudhry and Dr. Khan by causing Dr. Khan to denounce those Agreements and refuse to sell the Texas company. Count II alleges that Baig tortiously interfered with Xenon LLC's Management Agreement with Xenon TX by causing Xenon TX to attempt to steal the Texas Clients as well as other potential clients in Texas.[9] Count III alleges that Baig tortiously interfered with Hashim's employment agreement with Xenon LLC by causing him to assist in the purportedly unlawful competition with Xenon LLC, including but not limited to traveling to Texas to meet with the Texas Clients. Clearly, the injuries alleged in Counts I-III all occurred in Texas, where Dr. Khan refused to sell Xenon TX and where attempts allegedly were made to steal Xenon LLC's clients and potential clients. Thus, Texas law applies to those counts.

In Texas[10], the elements of tortious interference with contract are: (1) the existence of a contract subject to interference; (2) an act of interference that is wilful, intentional, and calculated

---

[8] In any event, Virginia law is very similar to Texas law in setting forth the elements necessary to establish the intentional tort claims.

[9] In fairness, the Amended Complaint also alleges the attempt to steal one potential client in Maryland.

[10] Similarly, in Virginia the elements are: (i) the existence of a valid contractual relationship or business expectancy; (ii) knowledge of the relationship or expectancy on the part of the interferor; (iii) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (iv) resultant damage to the party whose relationship or

to cause damage; and (3) actual damages or loss proximately resulting. *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex. 1989); *Armendariz v. Mora,* 553 S.W.2d 400, 404 (Tex.Civ.App.—El Paso 1977). Counts I-III make the boilerplate allegation that Baig "intentionally employed improper and wrongful conduct including, but not limited to, misrepresentations, deceit, defamation, duress, undue influence, common law conspiracy, statutory business conspiracy, unethical conduct, overreaching, and sharp dealing…" Yet proper pleading requires more than just a rote recitation of language from the case law. It requires substantive facts, for which the Amended Complaint is sorely lacking.

The Amended Complaint is virtually devoid of any specific examples of Baig's alleged misrepresentations, deceit or defamation. It does not specify any of the purportedly false statements, to whom they were made or when. Nor does it allege the specific manner in which Baig unduly influenced his alleged co-conspirators. Similarly, the Amended Complaint does not identify what conduct of Baig was unethical or else under what standards. Nor does it identify how Baig engaged in any overreaching behavior or with whom he engaged in sharp dealing.

Instead, the Amended Complaint details the allegedly improper acts of various other individuals, such as Hashim, Dr. Khan, and even the attorney for Dr. Khan and Xenon TX, Asim Ghafoor, and then attributes those improper acts to Baig by prefacing each allegation with the boilerplate statement that the individual was "acting at the direction and under the undue influence of Defendant Baig." *See, e.g.,* Compl. ¶¶ 38, 39, 41, 42, 43, 44, 45, 67, 71. Yet the Amended Complaint does not go on to explain how, exactly, the individuals were purportedly acting under the direction or undue influence of Baig.

---

expectancy has been disrupted. *Dunn, McCormack & MacPherson v. Connolly*, 281 Va. 553, 558-59, 708 S.E.2d 867, 870 (2011).

By way of example, paragraph 39 alleges, in part, that on "December 28, 2011, Asim Ghafoor ("Ghafoor") acting at the direction and under the coercion of Defendant Baig, and as agent of and counsel to Dr. Ali Khan and Xenon TX, sent a fax to Xenon LLC's billing vendor (Northeast Medical Billing in Syosset, NY), instructing [it] to cease further business communication with Xenon LLC regarding Xenon TX."  Paragraph 30 is contradictory because in one breath Plaintiffs state that Ghafoor was acting as the agent and counsel of Dr. Khan and Xenon TX, but in the next they state that he was also somehow acting at the direction and under the coercion of Baig.  The Amended Complaint is devoid of any follow-up allegations detailing how Baig supposedly coerced or unduly influenced an attorney to engage in purportedly unlawful activity.

While the Amended Complaint includes an affidavit from Hashim in support of its allegations, the statements in the affidavit amount to nothing more than the same hollow and conclusory allegations set forth in the Amended Complaint.  Simply having an affidavit attesting to the veracity of empty and baseless allegations does not amount to proper pleading.  For example, the Amended Complaint asserts that Baig intentionally interfered with Hashim's employment contract with Xenon LLC, yet Hashim's affidavit does not even state that Baig ever read the agreement or urged Hashim to breach its terms in any way.  The remainder of the Amended Complaint is rife with similar, unsubstantiated wholesale allegations which attribute the conduct of others to Baig.  These allegations are far from sufficient to demonstrate any specific acts of interference on the part of Baig and, therefore, Counts I-III should be dismissed for the failure to state a claim upon which relief can be granted.

### 4.    Count IV of the Amended Complaint fails to allege facts sufficient to state a claim for tortious interference with business expectancy.

Count IV maintains that Baig tortiously interfered with Xenon LLC's alleged business expectancy with respect to certain client leads, including two doctors in Texas (Dr. Garcia and Dr. Siddiqui). Clearly, any injury related to such interference would have arisen in Texas when the doctors were purportedly dissuaded from consummating any contemplated contractual relations with Xenon LLC. Thus, Texas law also applies to Count IV.

In Texas[11], the elements of tortious interference with business expectancy are: (1) the reasonable probability that a contractual relationship would have been entered; (2) an intentional, malicious intervention with the formation of that relationship; (3) without privilege or justification; (4) resulting in actual damage or loss. *Gillum v. Republic Health Corp.*, 778 S.W.2d 558, 565 (Tex.App.—Dallas 1989, no writ). Count IV makes the same types of boilerplate allegations that Baig "intentionally employed improper and wrongful conduct including, but not limited to, misrepresentations, deceit, defamation, duress, undue influence, common law conspiracy, statutory business conspiracy, unethical conduct, overreaching, and sharp dealing…" For the same reasons set forth in the previous section, Count IV is similarly devoid of any factual allegations in support of its claims.

While the Amended Complaint states that Xenon LLC "had a tangible and objective business and contract expectancy with, among other client leads, Dr. David Garcia in San Antonio, TX, Dr. Umed Shah in Hollywood, MD, and Dr. Junaid Siddiqui in Round Rock, TX" it does not

---

[11] Similarly, in Virginia the elements are:  (1) the existence of a business relationship or expectancy, with a probability of future economic benefit to plaintiff; (2) defendant's knowledge of the relationship or expectancy; (3) a reasonable certainty that absent defendant's intentional misconduct, plaintiff would have continued in the relationship or realized the expectancy; and (4) damage to plaintiff. *Glass v. Glass,* 228 Va. 39, 321 S.E.2d 69 (1984).

contain any allegations that there was a reasonable probability that a contractual relationship would have been entered into with those purported leads.  In fact, by the Amended Complaint's own admission, Xenon LLC could not have consummated any contractual relationship with those leads because Dr. Chaudhry was not yet licensed to practice medicine in Texas during the time that they were allegedly contacted.  Specifically, it is alleged that the solicitation of the client leads began in December of 2011, which was ten months *before* Dr. Chaudhry obtained his medical license in Texas.  Am. Compl. ¶ 76.  Up until that time, Xenon LLC did not have any clients in Texas, as they all had agreements with Xenon TX.  For this same reason, the alleged client leads could not have been confidential information capable of misappropriation.  In any event, the Amended Complaint does not sufficiently allege that any of the purported leads were actually lost as a result of any alleged improper conduct by Baig, whether because they decided to do business with Xenon TX or someone else.  And with respect to Dr. Shah, the Amended Complaint does not even allege that Xenon LLC was authorized to transact business within the State of Maryland during the relevant time period such that it could have obtained his business in any event.

### 5.     Count V of the Amended Complaint fails to allege facts sufficient to state a claim for business conspiracy under Va. Code § 18.2-499.

Count V alleges a statutory business conspiracy claim under a Virginia statute. Specifically, under Va. Code § 18.2-499, to prove a claim for statutory business conspiracy, a plaintiff "must show that: (1) two or more persons combine [d], associate [d], agree [d], or mutually undert[ook] together, to (2) willfully and maliciously injure [the plaintiff in its] reputation, trade, business, or profession," *Michigan Mut. Ins. Co. v. Smoot,* 128 F.Supp.2d 917, 925 (E.D.Va. 2000), and (3) that the conspiratorial actions of the defendants caused the plaintiff to suffer damages.  *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.,* 108 F.3d 522, 526 (4th Cir. 1997).

23

However, Plaintiffs' conspiracy claims under the Virginia statute are in direct conflict with the choice of law analysis mandating that any such claims be adjudicated under Texas law. When determining what state's law is dictated by *lex loci delicti* with respect to conspiracy, the place of the wrong is the place of the first causally-related injury because the first legal injury produced by an alleged business conspiracy is the last act necessary for liability. *Hilb Rogal & Hobbs Company v. Rick Strategy Partners, Inc.*, No. 3:C5cv355, 2006 WL 5908727, *6 (E.D.Va. Feb. 10, 2006). Count IV alleges that Baig conspired with others to use Xenon LLC's confidential client information to solicit away its client leads. It also alleges that Baig conspired with others to injure Dr. Chaudhry and Xenon LLC in their reputations and business relations. The first injuries alleged in the Amended Complaint pertaining to Count V are Dr. Khan and Xenon TX's renouncement of their respective agreements with Dr. Chaudhry and Xenon LLC (pertaining to the servicing of the Texas Clients and the sale of Texas company Xenon TX) along with their unspecified actions in December 2011 to "make concerted and coordinated efforts to interfere with Xenon LLC's business operations. Am. Compl. ¶¶ 23-24, 35-36. Thus, the first causally related injuries occurred in Texas and its law applies to Count V.

Since Texas law applies, this Court does not need to determine whether the facts alleged in support of Count V are sufficient because Plaintiffs cannot bring a Virginia statutory cause of action under Texas law. Put another way, Plaintiffs cannot avail themselves of a cause of action that is borne from Virginia legislation when their claim is governed exclusively by Texas law. Moreover, Texas law does not appear to have an analog statutory business conspiracy cause of action, nor has one been alleged in the Amended Complaint. For this reason alone, Count V must be dismissed. Even if this Court was to deem that Count V was not barred by the application of

Texas law, it still fails to state a claim upon which relief can be granted for the same reasons set forth in subparagraph (6) below.

      **6.    Count VI of the Amended Complaint fails to allege facts sufficient to state a claim for common law conspiracy to induce breach of contract.**

Count V alleges that Baig conspired with Hashim, Dr. Khan and Xenon TX to induce Dr. Khan to breach the Sales Agreements and to induce Xenon TX to breach the Management Agreement.  For the same reasons detailed above, Texas law applies to Count VI under the choice of law analysis.

Texas[12] recognizes a cause of action for common law conspiracy to induce a breach of contract.  *Snodgrass v. Am. Sur. Co. of N. Y.*, 156 S.W.2d 1004, 1006 (Tex. Civ. App. 1941).  In order to prove a conspiracy to interfere with a contract, whether by inducing a breach or otherwise, there must be an "agreement or understanding between the conspirators to inflict a wrong against, or injury, on, another, a meeting of minds on the object or course of action, and some mutual mental action coupled with an intent to commit the act which results in injury; in short, there must be a preconceived plan and unity of design and purpose, for the common design is of the essence of the conspiracy."  *Guynn v. Corpus Christi Bank & Trust*, 589 S.W.2d 764, 771 (Tex. Civ. App. 1979).  Texas also adheres to the rule that one cannot conspire against oneself.  Thus, employees or agents of a principal acting within the course and scope of their employment or agency relationship cannot enter into a conspiracy with each other "so long as they are not acting outside their capacity as an employee or agent or are not acting for a personal purpose of their own; the

---

[12] In Virginia, an action in tort also lies against those who conspire to induce the breach of a contract. *Worrie v. Boze,* 198 Va. 533, 540, 95 S.E.2d 192, 198 (1956).  The plaintiff must establish that there was a conspiracy to procure the breach of contract and that pursuant to such conspiracy the contract was breached.  *Id.* at 541-42, 95 S.E.2d at 199.  There must be two persons to comprise a conspiracy, and a corporation, like an individual, cannot conspire with itself.  *Griffith v. Electrolux Corp.,* 454 F.Supp. 29, 32 (E.D.Va. 1978).

acts of the employees or agents are acts of the principal, and the general rule applies." *See, e.g., Tex.-Ohio Gas, Inc. v. Mecom,* 28 S.W.3d 129, 138 (Tex.App.-Texarkana 2000, no pet.); *Crouch v. Trinque*, 262 S.W.3d 417, 427 (Tex. App. 2008).

Keeping this principal in mind, Baig's alleged conspiracy with Hashim, Dr. Khan and Xenon TX to induce Dr. Khan to breach the Sales Agreements must fail as a matter of law. First and foremost, Dr. Khan cannot be part of a conspiracy to induce himself to breach his own contract. The same applies with respect to Xenon TX's contracts. Second, Xenon TX cannot conspire with its agents unless they are acting outside the scope of their employment, which is not alleged. Thus, there cannot be a conspiracy between Dr. Khan and Xenon TX. This leaves only a conspiracy between Baig and Hashim to induce Dr. Khan and Xenon TX to breach their respective agreements. However, there are no allegations in the Amended Complaint to support such a theory. In fact, the Amended Complaint is threadbare when it comes to allegations concerning communications from Baig to Hashim.

While the Amended Complaint does include quotes from various emails sent by Hashim to Baig, it does not include any responses from Baig to those emails. For example, paragraphs 87-89 of the Amended Complaint discuss emails that Hashim sent to Baig. However, the Amended Complaint does not discuss any specific emails that Baig sent to anyone at all discussing his allegedly masterminded plan. In fact, the best the Amended Complaint can allege is that Baig "also sent emails to Hashim" by forwarding correspondence from Xenon LLC's company lawyer and confirming a meeting with Hashim, the purpose of which is unidentified. Am. Compl. ¶¶ 90-91. Sending on a letter that he did not even write and confirming an unspecified meeting is hardly support for the contention that Baig was the puppet-master in an alleged conspiracy. Similarly, the Amended Complaint alleges that Hashim "invited" Baig to participate on a conference call

with Dr. Khan and Ghafoor, but makes no allegations about what, if anything, Baig said during that call or that he even attended the conference call, for that matter. *Id.* at ¶ 93. At best, the Amended Complaint paints a picture of Hashim reaching out to Baig for advice and inviting him to participate, but not receiving any substantive response or participation in return. However, the pleading falls far short of alleging the facts necessary to support a civil conspiracy claim.

## IV.    CONCLUSION

For the foregoing reasons, Defendant Mirza Baig moves this Court to transfer the venue in this matter to the Southern District of Texas or, in the alternative, to dismiss the lawsuit in its entirety for the failure to state a claim, and to grant such further relief as deemed just and proper.

DATED: May 3, 2013                                Respectfully submitted,

                                                  MIRZA BAIG
                                                  By Counsel


                                                  _____/s/_____
                                                  John Patrick Sherry, Esq.
                                                  VSB No. 48768
                                                  JPS Law PLLC
                                                  10513 Judicial Drive
                                                  Suite 204
                                                  Fairfax, Virginia 22030
                                                  T: 703.385.4561
                                                  F: 703.890.1596
                                                  jpsherry@jpslaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 3rd day of May 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to the following registered ECF user:

Kevin F.X. DeTurris, Esq.
The Law Offices of Kevin F.X. DeTurris, LLC
43948 Riverpoint Drive
Leesburg, Virginia 20176
T: 571.252.8081
F: 571.252.8087
kdeturris@deturrislaw.com
*Counsel for Plaintiffs*

_____/s/_____
John Patrick Sherry, Esq.
VSB No. 48768
JPS Law PLLC
10513 Judicial Drive
Suite 204
Fairfax, Virginia 22030
T: 703.385.4561
F: 703.890.1596
jpsherry@jpslaw.com

28