IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

XENON HEALTH LLC, and             §
HAROON W. CHAUDHRY, M.D.,         §
                                  §
     Plaintiffs,                  §
                                  §
v.                                §     CIVIL ACTION NO. H-13-1828
                                  §
MIRZA BAIG,                       §
                                  §
     Defendant.                   §


MEMORANDUM AND ORDER


     Pending is Defendant Mirza Baig's Motion for Summary Judgment
(Document No. 72), to which Plaintiffs have filed their response in
opposition.  After carefully considering the motion, memoranda in
support, response, reply, surreply,[1] and the applicable law, the
Court concludes as follows.


I. Background


     Plaintiff Xenon Health LLC ("Xenon") is a California-based
company that provides anesthesia services to medical facilities and
management services to other anesthesia providers, and Plaintiff
Haroon W. Chaudhry, M.D. ("Dr. Chaudhry," and together with Xenon,
"Plaintiffs") is the president and chief executive officer of

_____

     [1] Also pending before the Court is the Sealed Motion of
Plaintiffs Xenon Health LLC and Haroon Chaudhry, M.D. for Leave to
File Response to Reply to Plaintiffs' Opposition to Defendant Mirza
Baig's Motion for Summary Judgment (Document No. 100), which motion
is GRANTED.

Xenon.[2]   Xenon has subsidiaries in various states and sought to expand into Texas in early 2011.[3]   Xenon could not operate a professional entity in Texas, however, because Dr. Chaudhry was not then licensed to practice either administrative or clinical medicine in the State of Texas.   Therefore, Fahim Hashim ("Hashim"), who worked for Dr. Chaudhry as Xenon's Chief Operating Officer, reached out to his longtime friend and business associate, Defendant Mirza Baig ("Defendant").[4]   Defendant Baig in turn introduced to Plaintiffs his cousin, Dr. Mutjaba Ali Khan ("Dr. Khan" or "Dr. Ali Khan"), a physician licensed to practice medicine in the State of Texas.[5]

In July 2011, Dr. Ali Khan and Dr. Chaudhry signed three documents, all dated "July ___ 2011" [sic]: (1) a Purchase and Sale Agreement (the "Purchase Agreement"), (2) an Equity Interest Assignment Agreement (the "Equity Agreement") that was attached to the Purchase and Sale Agreement as Exhibit B, and (3) an Exclusive Management Services Agreement (the "Management Agreement") between Xenon and Xenon Anesthesia of Texas PLLC ("Xenon Texas").   These

---

[2] Document No. 10 ¶¶ 1-2, 6 (Am. Complt.); Document No. 81, ex. 2 ¶ 1, at 7 of 100 (Decl. of Haroon W. Chaudhry, M.D.).

[3] Document No. 73, ex. Q at 20:4-23:21; id., ex. Q at 115:20-116:6.

[4] Id., ex. Q at 117:2-9; Document No. 81, ex. 13 at 95:21-96:23; Document No. 10 at 14.

[5] Document No. 81, ex. 13 at 96:12-20; Document No. 10 ¶ 3.

three interrelated documents evidence a scheme whereby Dr. Khan would form Xenon Texas and act as its managing member ostensibly to provide anesthesia services in Texas, the services in fact would be provided by Dr. Chaudhry and his California entity Xenon pursuant to the Management Agreement, and Dr. Khan would then sell to Dr. Chaudhry all of his interest in Xenon Texas within seven business days of being notified that Dr. Chaudhry had received a Texas medical license. Until Dr. Chaudhry received a license, however, Xenon would perform certain services for Xenon Texas in exchange for a monthly service fee of $750,000.[6]

In December 2011, Hashim suspected that Dr. Chaudhry was going to terminate him and, eventually, he left Xenon.[7]  Around this time, Plaintiffs allege that Defendant began conspiring with Hashim, Dr. Ali Khan, and Dr. Ali Khan's attorney, Asim Ghafoor ("Ghafoor") to wrest control of Xenon Texas from Xenon.[8]  Plaintiffs further allege that acting in concert with Hashim and Dr. Ali Khan--all before Dr. Chaudhry received a Texas administrative medical license on October 1, 2012--Defendant caused the termination of the Management Agreement between Xenon Texas and Xenon; the termination of the Purchase Agreement and the Equity Agreement, both between Dr. Ali Khan and Dr. Chaudhry; the

_____

[6] Document No. 73, ex. C at 1-2.

[7] Document No. 81, ex. 5 ¶ 3.

[8] Id., ex. 5 ¶¶ 4-19.

3

violation of Hashim's Employment Agreement with Xenon; and various other tortious conduct.  Plaintiffs' Complaint alleges in all six separate Counts.[9]

By Order dated October 24, 2013, the Court dismissed portions of Plaintiffs' claims including:  (1) the portion of Plaintiffs' claim in Count IV that alleges tortious interference with tangible and objective business expectancies in Texas and (2) Count V, which alleges conspiracy to induce breach of contract and misuse of confidential client information under the Virginia business conspiracy statute.[10]  In addition, Plaintiffs now concede, and the Court therefore orders, that Defendant "is entitled to partial summary judgment on the portion of Count IV of the Amended Complaint that survived this Court's ruling on [Defendant's] earlier Motion to Dismiss."[11]  Thus, Plaintiffs' remaining claims include: (1) Count I, which alleges tortious interference with Dr. Chaudhry's contractual relations, including the Purchase Agreement and the Equity Agreement; (2) Count II, which alleges tortious interference with Xenon's contractual relations, including the Exclusive Management Services Agreement with Xenon Texas; (3) Count III, which alleges tortious interference with Xenon's employment contract with Hashim; and (4) Count VI, which alleges

---

[9] Document No. 73, ex. S ¶¶ 8-9; Document No. 10 ¶ 64.

[10] Document No. 39 at 13-17.

[11] Document No. 80 at 1, n.1.

4

common law conspiracy to induce breach of contract.[12]   Defendant
moves for summary judgment on Plaintiffs' four remaining Counts.[13]

## II. <u>Legal Standard</u>

Rule 56(a) provides that "[t]he court shall grant summary
judgment if the movant shows that there is no genuine dispute as to
any material fact and the movant is entitled to judgment as a
matter of law." Fed. R. Civ. P. 56(a).   Once the movant carries
this burden, the burden shifts to the nonmovant to show that
summary judgment should not be granted. <u>Morris v. Covan World Wide
Moving, Inc.</u>, 144 F.3d 377, 380 (5th Cir. 1998).   A party opposing
a properly supported motion for summary judgment may not rest upon
mere allegations or denials in a pleading, and unsubstantiated
assertions that a fact issue exists will not suffice. <u>Id.</u>  "[T]he
nonmoving party must set forth specific facts showing the existence
of a 'genuine' issue concerning every essential component of its
case." <u>Id.</u>  "A party asserting that a fact cannot be or is
genuinely disputed must support the assertion by:  (A) citing to
particular parts of materials in the record . . .; or (B) showing
that the materials cited do not establish the absence or presence
of a genuine dispute, or that an adverse party cannot produce
admissible evidence to support the fact." Fed. R. Civ. P.

---

[12] *See* Document No. 39.

[13] Document No. 72.

56(c)(1).  "The court need consider only the cited materials, but it may consider other materials in the record." Id. 56(c)(3).

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986).  All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).  "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993).  On the other hand, if "the fact finder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id.  Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." Anderson, 106 S. Ct. at 2513.

## III. Discussion

Defendant moves for summary judgment on all of Plaintiffs' claims, arguing that (1) the agreements between Dr. Ali Khan and Dr. Chaudhry and the agreement between Xenon and Xenon Texas are illegal and illusory and thus, cannot be the subject of a claim for tortious interference; (2) as the underlying tort claims are

6

subject to dismissal, there is no basis for Plaintiffs' civil conspiracy claims in Count VI; (3) Plaintiffs released Defendant from liability on all claims in their complaint in a settlement agreement they made with Hashim; and (4) Plaintiffs do not have sufficient evidence of damages.[14]   Plaintiffs respond that (1) Plaintiffs' settlement agreement did not release Defendant from liability; (2) Defendant does not have standing to argue that the agreements between Dr. Ali Khan and Dr. Chaudhry and between Xenon and Xenon Texas were illegal and illusory; (3) the underlying tort claims are not subject to dismissal; and (4) Plaintiffs have produced sufficient evidence of damages to support their claims.

A.   Illegal and Illusory Agreements

1.   Standing

Plaintiffs contend that Defendant lacks standing to challenge the legality of the agreements between Dr. Ali Khan and Dr. Chaudhry and between Xenon Texas and Xenon, because Defendant was

---

[14] Defendant also argues that Counts I, II and VI should be dismissed because he had an absolute privilege to interfere with contracts involving Dr. Ali Khan, his first cousin. Document No. 73 at 20 of 30. Defendant did not plead the affirmative defense of privilege in his answer, and Magistrate Judge Stacy denied Defendant leave to amend his answer to add that defense, stating that "Defendant has waited too long to assert that relationship as a basis for an affirmative defense of privilege/justification." Document No. 99 at 1. Defendant's objections to the Magistrate Judge's Order (Document No. 113) were denied by Order of this Court on April 16, 2015 (Document No. 116). Thus, this argument is moot.

not a party to any of these contracts.[15]  A contract that is void for illegality, however, cannot support a claim for tortious interference with a contract.  *See* <u>NCH Corp. v. Share Corp.</u>, 757 F.2d 1540, 1543 (5th Cir. 1985) ("[W]hile a contract voidable under the statute of frauds will support a suit for tortious interference, the same result does not obtain where a contract is void as illegal or against public policy.") (citing <u>Guaranty Bk.(So. Oak Cliff Bk.) v. Nat'l Sur. Corp.</u>, 508 S.W.2d 928, 929, 932 (Tex. Civ. App.-Dallas 1974, writ ref'd., n.r.e)).[16]  In this instance, of course, Plaintiffs are suing Defendant Baig for tortious interference with contracts that Defendant contends are

---

[15] Document No. 80 at 7, 8.

[16] Plaintiffs rely on <u>Cassidy v. TeamHealth, Inc.</u>, No. 01-08-00324 CV, 2009 WL 2231217, at *1 (Tex. App.-Houston [1st Dist.] July 23, 2009 no pet.), to argue that Defendant has no standing to challenge the legality of the agreements between Dr. Ali Khan and Xenon Texas and Dr. Chaudhry and Xenon.  In <u>Cassidy</u>, two doctors and medical societies representing other specialists sought a declaratory judgment that certain healthcare systems were violating the Texas Medical Practice Act, and the defendants argued that these plaintiffs lacked standing to seek a declaratory judgment.  The court held that the plaintiffs lacked standing for their affirmative action, stating that "[t]he Medical Practice Act does not create a private cause of action, and appellants may not use the [Declaratory Judgment Act] to create a quasi cause of action to enforce the Medical Practice Act." <u>Id.</u> at *6 (citations omitted).  The instant case involves a different issue, namely, whether a defendant in a tortious interference of contract case may raise as a defense that the contract--to which he is not a party but which is the alleged predicate for a tort claim against him--is illegal and void, and thus is incapable of supporting a tortious interference claim against him.  As seen in <u>NCH Corp.</u>, the Fifth Circuit applying Texas law has held that a non-party to the contract may defend a tortious interference claim by showing the contract is illegal and void.

void as against public policy, and Defendant has standing to make that defense.   In other words, to support a claim for tortious interference with a contract, there must be a contract, even if voidable.   But a contract that is void is no contract at all, and Defendant is not precluded from asserting that defense.

2.   Texas Medical Practices Act

Under the Texas Medical Practices Act, "[a] physician or an applicant for a license to practice medicine commits a prohibited practice, if that person:  . . . (17) directly or indirectly aids or abets the practice of medicine by a person, partnership, association, or corporation that is not licensed to practice medicine by the board." TEX. OCC. CODE ANN. § 164.052.  "Under the Medical Practices Act and its predecessors, when a corporation comprised of lay persons employs licensed physicians to treat patients and the corporation receives the fee, the corporation is unlawfully engaged in the practice of medicine." Flynn Bros., Inc. v. First Med. Assocs., 715 S.W.2d 782, 785 (Tex. App.-Dallas 1986, writ ref'd n.r.e.).

In determining whether an entity has violated the Texas Medical Practices Act, Texas courts consider the amount of control the entity exercises over the doctor's practice and whether that control is such that it renders the relationship "more of an employer/employee relationship." Gupta v. E. Idaho Tumor Inst.,

9

Inc., 140 S.W.3d 747, 753 (Tex. App.-Houston [14th Dist.] 2004, pet. denied). Specifically, in Flynn, the court found that the "whole contractual scheme" violated the Texas Medical Practices Act because FBI, a corporation consisting of lay people, was (1) empowered to hire staff for the doctor's professional corporation and (2) collected 66.67% of the professional corporation's net profits. Flynn, 715 S.W.2d at 785. In contrast, the agreement in Gupta did not violate the Texas Medical Practices Act because the doctor had (1) "the authority to hire and fire his medical staff as he saw fit"; (2) the ability to determine how to complete billing requirements; and (3) the right to engage in other competing business opportunities.

Here, as in Flynn, the "contractual scheme" was devised to allow Dr. Chaudhry to do indirectly what he could not do directly by exercising substantial control over the practice of medicine in Texas. An understanding of the contractual scheme is pieced together by examining the three contracts and, as well, Dr. Ali Khan's "Delegation of Signature Authority" to Dr. Chaudhry. The Exclusive Management Services Agreement between Xenon Texas and Xenon recites that it is for the delivery of management services by Xenon to Xenon Texas, that Xenon will be the "exclusive provider of certain management services with respect to Anesthesia Services," that the exclusivity relationship will accomplish the objectives of facilitating administration of programs and services, assuring

consistence and prompt availability of service as well as quality control, and simplifying recruiting and scheduling.[17]  Section 2.1 of the written Management Agreement states that Xenon Texas agrees that all of the following management services related to its Anesthesia Services will be exclusively provided by Xenon:

> (i) recruiting, credentialing and scheduling (including ensuring vacation coverage) of anesthesia providers (the "*Anesthesia Providers*"), (ii) ordering and maintaining supplies and equipment, (iii) management of billing and collection services, (iv) monitoring and overseeing regulatory compliance, (v) providing financial reports, (vi) implementing quality assurance programs, (vii) management of all funds of Xenon (including with respect to receipt of accounts receivables and payment of expenses incurred by Xenon), and (viii) providing logistics (including, if necessary, assisting in structuring employment relationships with Anesthesia Providers).[18]

Xenon's pervasive control of the operations of Xenon Texas was further assured by Dr. Khan's "Delegation of Signature Authority" to Dr. Chaudhry.  As "sole owner and manager of Xenon Texas," Dr. Khan granted to Dr. Chaudhry authority to sign on behalf of Xenon Texas (the "Company") the following:

> (a) an agreement granting the Company the right to provide Anesthesia Services at a medical facility located at 421 School Street, Suite 110, Tomball, Texas 77075,

---

[17] Document No. 73, ex. C at 1.

[18] Document No. 73, ex. C ¶ 2.1 (emphasis in original).

(b)  an agreement granting the Company the right to provide anesthesia services at a medical facility located at 11212 State Hwy 151, Suite 270, San Antonio, Texas 78251,

(c)  an agreement whereby the Company engages the services of Dr. Rozita Mesbah as an independent contractor,

(d)  an agreement for a billing company to provide anesthesia billing services for the Company,

(e)  all agreements related to the *recruitment*, *placement*, and *hiring* of anesthesia providers, and

(f)  all documents related to (a)-(e) above.[19]

The foregoing signature authorization from Dr. Khan to Dr. Chaudhry, the latter also signing to show the "sample signature of delegee," clarifies that it was Dr. Chaudhry who in fact had the authority to enter into agreements to provide anesthesia services to hospitals or medical providers, to recruit, to place, and to hire anesthesiologists, to subcontract for a billing company to provide billing services, and, as a practical matter, to conduct the full range of services of a Texas anesthesia service operator.

At the time that Dr. Chaudhry entered into this scheme with Dr. Khan, according to Plaintiffs' Amended Complaint, Dr. Chaudhry had "secured the commitment" of two Texas medical facilities, the Gastroenterology Diagnostic Center in Tomball, Texas, and the

---

[19] Document No. 73, ex. B at 22 of 89 (emphasis added).

Westover Hills Gastroenterology Center in San Antonio, Texas.[20]
With this initial small book of anesthesia services business for
Xenon Texas to conduct, evidently in a couple of one-doctor
endoscopy facilities, the Exclusive Management Services Agreement
recites that Xenon Texas, in consideration for Xenon operating
Xenon Texas's anesthesia services, agreed to pay to Xenon a
"monthly service fee" of seven hundred fifty thousand dollars
($750,000.00), referred to as the "Fair Market Monthly Fee," to be
paid out of Net Collections.[21]  The term "Net Collections" is
defined as the "total sum of all monies collected by Company [Xenon
Texas] for clinical services rendered by Company, less amounts
refunded or credited to a patient or third party payer as a result
of overpayments, erroneous payments or bad checks."[22]  Dr. Chaudhry
affirmed in his deposition that Xenon had the authority to handle

---

[20] Document No. 10 ¶ 12.  The Court takes judicial notice that
both facilities have public websites identifying their personnel
and services.   The Westover Hills Gastroenterology Center,
according to its website, is a facility with one board certified
gastroenterologist, Luis José Acosta, M.D., who opened Westover
Hills Gastroenterology in 2010.  Among other digestive health care
needs, the website states that Dr. Acosta does endoscopy
procedures.  WESTOVER HILLS GASTROENTEROLOGY, http://missiongastro.com/
(last visited June 2, 2015).  The Gastroenterology Diagnostic
Center, according to its website, is a facility with one board
certified gastroenterologist, Shabbir Jamali, M.D., who states that
among other things he does colonoscopy and endoscopy procedures.
GASTROENTEROLOGY DIAGNOSTIC CENTER, http://gicentertexas.com/index.php
(last visited June 2, 2015).

[21] Document No. 73, ex. C ¶ 2.2.

[22] Id.

all Xenon Texas funds under their arrangements, and that the
anesthesia providers would be paid by Xenon through the Xenon Texas
entity although it was Xenon who was physically paying them.[23]
Dr. Chaudhry in his oral deposition declined to state any
expectation that Xenon Texas would have the ability to pay its
$750,000 monthly service fee to Xenon when it started doing
business, replying instead that he did "not know."[24]  The uncon-
troverted summary judgment evidence of the payment terms of the
arrangement––that Xenon Texas with two separate gastronomy medical
offices each with one doctor as its customers, and even with
ambitions to recruit new customers, should have such a volume of
anesthesia services that Xenon Texas's Net Collections for those
services would enable it to pay to the retained or employed
anesthesiologists their fees or salaries for the actual clinical
services provided, pay to a third party billing company its fee for
billing services, and then pay to Xenon $750,000 per month or
$9 million per year for recruiting, hiring, and placing the
anesthesiologists and managing Xenon Texas's operations––
demonstrates as a matter of law an obviously noncommercial sham
arrangement.  Indeed, Dr. Chaudhry in his deposition referred to
Dr. Khan as the "paper owner of the Xenon Texas entity."[25]

---

[23] Id., ex. Q at 130:3-131:12; id. ex. Q at 122:15-123:8.

[24] Id., ex. Q at 89:3-11.

[25] Id., ex. Q at 130:3-22.

The uncontroverted summary judgment evidence and a reading of the agreements as a whole disclose that Dr. Ali Kahn would be paid for his role in the scheme after Dr. Chaudhry received his Texas medical license and gave notice to Dr. Khan to consummate the Purchase and Sale Agreement that they both signed at the inception of the scheme.  That agreement provides:

> 2.4   **Closing**.  The closing of the transactions contemplated by this Agreement (the "**Closing**") will take place no later than seven (7) business days following the date on which Purchaser [Dr. Chaudhry] notifies Seller [Dr. Khan] in writing that Purchaser has obtained a license to practice medicine in the State of Texas (the "**Texas Medical License**").  The date on which the Closing occurs is referred to in this Agreement as the "**Closing Date**."[26]

At closing, the purchase price to be paid to Dr. Khan for his Texas Xenon, the alter ego for Dr. Chaudhry's operations until he received his Texas Medical License, was the sum of Dr. Khan's reasonable start-up expenses in forming the Company, plus the greater of (i) "five percent (5.0%) of Net Collections (as defined hereafter) arising from anesthesia-related procedures performed by Company between the Effective Date and the Closing Date" at medical facilities located in Texas and (ii) "five percent (5.0%) of the Net Collections arising from anesthesia-related procedures performed by Company at the [Texas] Facilities during the period beginning on the Effective Date and ending one hundred and eighty

---

[26] Id., ex. A ¶ 2.4 (emphasis in original).

(180) days thereafter."[27]   Again, the term "Net Collections" is defined in words identical to the definition contained in the Exclusive Management Services Agreement, namely, "the total sum of all monies collected by Company for clinical services rendered by Company, less amounts refunded or credited to a patient or third party payer as a result of overpayments, erroneous payments or bad checks."[28]

Section 7 of the Purchase and Sale Agreement is entitled "Texas Medical License" and contains an express acknowledgment and agreement that Xenon Texas may only be transferred to an entity or person holding a Texas medical license, and that Dr. Chaudhry "expects to secure the Texas Medical License by July 1, 2012."[29] Dr. Chaudhry's control and Dr. Ali Kahn's non-discretionary role were further secured by Section 7's proviso that if for any reason Dr. Chaudhry fails to obtain the medical license before December 1, 2012 "then [Dr. Chaudhry] may designate, in his sole discretion, a third-party entity or person (the **'New Purchaser'**) to whom [Dr. Khan] will transfer all of the Interests."[30]

The transparent purpose of this amalgam of contemporaneous contracts and Delegation of Signature Authority devised by

---

[27] Id., ex. A ¶ 2.1.

[28] Id.

[29] Id., ex. A ¶ 7.1.

[30] Id., ex. A ¶ 7.2.

Dr. Chaudhry and agreed by Dr. Khan was to allow Dr. Chaudhry, "a person . . . not licensed to practice medicine by the [Texas State Board of Medical Examiners]," TEX. OCC. CODE ANN. § 164.052(17), and his California business entity Xenon, to engage in providing anesthesia services in Texas through the subterfuge of a shell operation with a "paper owner." *See* <u>Flynn</u>, 715 S.W.2d at 785 ("[T]he whole contactual scheme was developed to do indirectly that which they freely concede they could not do directly under the Medical Practices Act"). Such a scheme is illegal under Texas law, rendering the inextricably intertwined Exclusive Management Services Agreement, Purchase and Sale Agreement, and Equity Interest Agreement all void and of no force or effect. *See* <u>id.</u> Defendant is therefore entitled to summary judgment on Plaintiffs' claims for tortious interference with these alleged contracts which contravene public policy and are void. Accordingly, Plaintiffs shall take nothing on Counts I and II of Plaintiffs' Complaint against Defendant and those Counts are DISMISSED on the merits.[31]

---

[31] The parties argue the significance of two other cases filed by Dr. Chaudhry arising out of the Chaudhry/Xenon v. Khan/Xenon Texas controversy. In <u>Xenon Anesthesia of Texas P.L.L.C. and Ali Khan v. Xenon Health, LLC and Haroon Chaudhry</u>, No. 9-12-0053-CV, 2013 WL 1279408, at *3 (Tex. App.–Beaumont March 28, 2013), the Beaumont Court of Appeals in March 2013, in an interlocutory appeal affirmed the state district court's temporary injunction prohibiting Khan and Xenon Texas from terminating or re-negotiating existing agreements with Xenon Texas, in order to preserve the status quo pending trial on the merits. In <u>Chaudhry v. Khan</u>, Cause No. 14-03-02507-CV (284th Dist. Ct., Montgomery County, Tex. July 31, 2014), the district court of Montgomery County, Texas, on July 31, 2014, awarded final judgment in Chaudhry's favor ordering Dr.

B.  <u>Conspiracy</u>

Plaintiffs' common law conspiracy count to induce breach of contract (Count VI) is premised on the foregoing void contracts between Xenon and Xenon Texas, and Dr. Chaudhry and Dr. Khan, and for the reasons previously stated Defendant is entitled to summary judgment dismissing with prejudice Plaintiffs' claims that Defendant conspired with others to induce breach of the contracts found to be illegal and void.

---

Khan to transfer his ownership interest in Xenon Texas to Plaintiff Chaudhry and awarding Chaudhry attorney's fees.  Both cases arose out of the relationships and contracts that Plaintiff Chaudhry relies on in this case for his tortious interference claims against Defendant, but neither the Court of Appeals opinion nor the Final Judgment of the state district court contains an analysis of the issues raised here.  Moreover, both the decision by the Beaumont Court of Appeals affirming a preliminary injunction in the one case, and the final judgment in the separate district court case were decisions rendered after Dr. Chaudhry had received a Texas administrative medicine license on or about October 1, 2012 (Document No. 10 ¶ 64), a fact that is noticed at least in the Court of Appeals opinion (<u>Xenon Anesthesia of Texas</u>, 2013 WL 1279408, at *1).  Plaintiffs' allegations of tortious interference in this case, however, allegedly accrued in late 2011 and the early months of 2012, when Plaintiff Chaudhry had neither a Texas administrative medicine license nor a Texas clinical medical license.  Document No. 10 ¶¶ 23-63.  For example, Plaintiffs allege that it was in December 2011 that Baig caused the wrongful termination of Xenon Texas's Exclusive Management Services Agreement with Xenon, revoked its power of attorney granted to Dr. Chaudhry, and took measures to deny Dr. Chaudhry and Xenon access to Xenon Texas's bank accounts.  <i>See</i> Document No. 10 ¶¶ 23-63. Whatever the post-medical licensure effect was, if any, that the Texas state courts may have found inured to the benefit of Chaudhry when he received a Texas administrative medicine license, he had no administrative medical license or clinical medical license in Texas in late 2011 and during the first nine months of 2012 when the alleged tortious interference occurred, and the contracts then were void as against public policy.

C.   <u>Tortious Interference with Xenon's Contract with Hashim</u>

Defendant argues that Plaintiffs released him of the claims they allege in Count III (and all other Counts) in a December 2012 settlement agreement resolving a California case, which Plaintiffs had filed against Hashim and others.  Baig was not a party to that case.  The Settlement Agreement released and discharged Hashim (and the other defendants in that case)

> including . . . their past, present, and future
> principals, agents, . . . partners [and] affiliates from
> any and all past, present or future claims, demands,
> obligations, or causes of action . . . whether based on
> tort, contract or other legal or equitable theories of
> recovery . . . which Plaintiffs may have against
> Defendants, . . . including, in particular [claims that
> were or could have been raised] that Fahim Hashim . . .
> misappropriated Xenon trade secrets, . . . all Parties
> acknowledging that Fahim Hashim . . . or anyone acting on
> [his] behalf did not misappropriate any Xenon trade
> secrets . . . .[32]

Defendant Baig argues that Plaintiffs thereby fully released Baig, either as a principal, agent, or partner of Hashim, from all claims made in this case against Baig.  After careful consideration, the Court is unable to find as a matter of law that the release was intended to benefit Baig, and at a minimum issues of fact are present with regard to the scope of the release.  *See*, *e.g.*, <u>Cline v. Homuth</u>, 235 Cal. App. 4th 699, 705 (2015).

---

[32] Document No. 73, ex. I ¶ 4(a).

Because genuine issues of material fact remain to be tried on Plaintiffs' claims against Defendant Baig for tortious interference with Xenon's employment contract with Hashim, Defendant's motion for summary judgment is denied as to Count III.

## IV. <u>Order</u>

Accordingly, it is

ORDERED that Defendant Mirza Baig's Motion for Summary Judgment (Document No. 72) is GRANTED as to all claims made by Plaintiffs Xenon Health LLC and Haroon W. Chaudhry, M.D. against Defendant Mirza Baig, except only for Plaintiffs' claim for tortious interference with Xenon LLC's employment contract with Hashim, which remains for trial.  All other claims by Plaintiffs against Defendant Baig are DISMISSED WITH PREJUDICE.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, this 19th day of June, 2015.


                                    _____
                                    EWING WERLEIN, JR.
                          UNITED STATES DISTRICT JUDGE

20